**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**CURTIS WRIGHT,**

      **Petitioner,**

      **v.**

**WARDEN, NOBLE CORRECTIONAL
INSTITUTION,**

      **Respondent.**

      **CASE NO. 2:12-CV-512
JUDGE GRAHAM
MAGISTRATE JUDGE ABEL**

**REPORT AND RECOMMENDATION**

      Petitioner Curtis Wright, a state prisoner, brings this action for a writ of habeas corpus under 28 U.S.C. § 2254. This matter is before the Magistrate Judge on the petition, Respondent's Return of Writ, and the exhibits of the parties.

      This case involves Curtis Wrights conviction after a jury trial in the Harrison County Court of Common Pleas for burglary. The Seventh District Court of Appeals affirmed his conviction, and the Ohio Supreme Court dismissed Petitioner's subsequent appeal. For the reasons that follow, the Magistrate Judge concludes that all of the claims Petitioner now raises in this federal habeas corpus petition are waived and the Magistrate Judge therefore **RECOMMENDS** that this action be **DISMISSED**.

**Facts and Procedural History:**

      The Ohio Seventh District Court of Appeals summarized the facts and procedural history of this case as follows:

> Appellant was indicted for burglarizing a neighbor's house while they were on vacation. At a jury trial, nineteen-year-old Shawn Ellenbaugh testified that appellant was his mother's live-in boyfriend. He stated that on the night of the burglary, he and

appellant walked to the neighbor's house because appellant wished to break in. (Tr. 216). He testified that appellant threatened to kill him if he told anyone. (Tr. 217). When they arrived, appellant tried to pry open the window but then used a rock to break the window. Shawn stated that he climbed through the window and unlocked the door for appellant. (Tr. 217–218). He testified that they went through the house stealing jewelry and money. (Tr. 221).

According to Shawn, they then walked to his uncle's house where appellant borrowed a car. He said they drove to Steubenville where appellant bought crack with the stolen money and was told that the jewelry was fake. (Tr. 225). They went back to the burglarized house and stole a big screen television. When it would not fit in the trunk, they put it in the front seat, and drove back to Steubenville to sell it. Shawn testified that no one wanted an old model television, so they left it at a car wash. (Tr. 228). He stated that they arrived home just before 7:00 a.m. (Tr. 229).

A cousin testified that she arrived at the house where Shawn and appellant lived at 6:30 a.m. after a night-shift at work. She stated that she saw the car pull in the drive with appellant in the driver's seat and Shawn in the passenger seat. (Tr. 254–256).

The owner of the vehicle testified that appellant arrived at his house at midnight on January 17, 2010 and borrowed his car. (Tr. 165). The next morning he went to the house where appellant lived to retrieve his car and noticed the trunk latch was broken and the dashboard was scratched. (Tr. 169–170). In the vehicle, he found a screwdriver, a broken necklace, and a gift card holder addressed to the person whose house had been burglarized. (Tr. 171, 173). His girlfriend confirmed that it was appellant who borrowed their vehicle. (Tr. 188).

Appellant's girlfriend, who is Shawn's mother, testified that appellant arrived home at 11:00 p.m. (Tr. 337). She claimed that she went with appellant to her brother's house to borrow his car, they went to Wintersville, and they returned home at 1:00 a.m. at which point they went to bed. (Tr. 339). She testified that appellant never left the bed that night. (Tr. 341).

Her fourteen-year-old son, Brandon Ellenbaugh, testified for the defense that his mother and appellant went to his uncle's to borrow a car and arrived home at midnight or 1:00 a.m. (Tr. 373). Brandon said that his brother Shawn then asked him if he wanted to take a ride in their uncle's car but he refused to accompany Shawn. He testified that he saw Shawn return with the vehicle in the morning.

2

According to Brandon, the next day, Shawn brought him to the house he had burglarized the night before, but Shawn noticed that someone had cleaned up the glass so they left. (Tr. 376).

On September 30, 2010, the jury found appellant guilty of third-degree felony burglary in violation of R.C. 2911.12(A)(3). On October 28, 2010, appellant filed a motion for a new trial based upon newly discovered evidence. Brandon Ellenbaugh had delivered a written statement to the police station on October 26, 2010, claiming that it was he and Shawn who burglarized the house in the early morning hours of January 17, 2010.

At a hearing, Brandon testified that they pushed their uncle's car out of their drive and drove to the neighbor's house. He described how they went through the house and what they stole. He said that Shawn went into an apartment in Cadiz for thirty minutes and reported that no one wanted to buy the television and the jewelry was fake. He stated that they left the television at a car wash in Cadiz. (Tr. 19).

The detective who took Brandon's statement testified that Brandon told him that he missed appellant at their house and that he wanted to get him released. Brandon disclosed his belief that he would not be incarcerated because he was a juvenile. (Tr. 8–9). The detective believed that the child had been coached or that he fabricated the story to assist appellant. (Tr. 9).

On December 28, 2010, the court denied the motion for a new trial. The court opined that Brandon's new story was not credible. The court noted that both of Brandon's stories lacked detail. The court pointed out that the jury did not place much weight on Brandon's original testimony when he testified for the defense and that this new story was also not credible. Appellant was then sentenced to five years in prison, and he filed a timely notice of appeal.

*State v. Wright*, No. 11 HA 2, 2011 WL 5346084, at *1-2 (Ohio App. 7th Dist. Nov. 4, 2011).

Petitioner filed the following assignments of error on appeal:

> 1.  A TRIAL COURT MUST GRANT A DEFENDANT'S MOTION FOR A NEW TRIAL WHEN A WITNESS RECANTS HIS TESTIMONY AND THAT WITNESS CONFESSES THAT HE COMMITTED THE CRIME.

     2.  MR. WRIGHT'S CONSTITUTIONAL RIGHTS TO CONFRONT THE WITNESSES AGAINST HIM WERE VIOLATED WHEN THE TRIAL COURT PROHIBITED HIM FROM CROSS–EXAMINING PENNY WILSON AND BRITTANI RILEY ON MATTERS THAT WOULD HAVE IMPACTED THEIR CREDIBILITY AND EXPOSED BIAS, PREJUDICE, AND ULTERIOR MOTIVES AND SUPPORTED HIS DEFENSE.

     3.  THE TRIAL COURT'S CURATIVE INSTRUCTIONS WERE INSUFFICIENT TO CURE THE REPEATED, IMPROPER ALLEGATIONS THAT MR. WRIGHT ENGAGED IN OTHER BAD ACTS, INCLUDING, MAKING THREATS AGAINST CERTAIN WITNESSES AND ENGAGING IN OTHER CRIMINAL CONTACT.

     4.  MR. WRIGHT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

*See id*. at *2-11.  On November 4, 2011, the appellate court affirmed the trial court's judgment. *Id.*  On March 21, 2012, the Ohio Supreme Court dismissed Petitioner's subsequent appeal. *State v. Wright*, 131 Ohio St.3d 1484 (2012).

On June 11, 2012, Petitioner filed the instant *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He alleges that he is in the custody of the Respondent in violation of the Constitution of the United States based upon the following grounds:

     1.  A trial court must grant a defendant's motion for a new trial when a witness recants his testimony and that witness confesses that he committed the crime. Crim.R. 33(A)(6). (Dec. 28, 2010 Judgment Entry; January 13, 2011 Judgment Entry Order to Transport.).

     Supporting Facts: The little brother of the guy, who actually committed the burglary, testified on stand at hearing for new

trial. Also wrote statement and drawed (sic) pictures of the inside of the house they burglarized. He confessed to doing the burglary with his older brother.

2.   Mr. Wright's constitutional rights to confront the witnesses against him were violated when the trial court prohibited him from cross-examining Penny Wilson and Brittani Riley on matters that would have impacted their credibility and exposed bias, prejudice, and ulterior motives and supported his defense. Sixth and Fourteenth Amendment to the United States Constitution and Sections 10 and 16, Article I of the Ohio Constitution. (Jury Trial Tr. 207; Jan. 13, 2011 Judgment Entry Order to Transport.).

Supporting Facts: Two of the state's witness went to my house and threatened one Case: 2:12-cv-00512-JLG-MRA Doc #: 6 Filed: 09/07/12 Page: 6 of 23 PAGEID #: 148 of my witness. (sic) When asked to question the state's witness, the state claimed their witness would plead the Fifth Amendment.

3.   The trial court's curative instructions were insufficient to cure the repeated, improper allegations that Mr. Wright engaged in other bad acts, including making threats against certain witnesses and engaging in other criminal contact. Evid.R. 404(A); Evid.R. 802; *State v. Demarco*, 31 Ohio St.3d 191, 509 N.E.2d 1256. (Jan. 13, 2011 Judgment Entry Order to Transport.).

Supporting Facts: The prosecutor kept letting his witness bring up things that had nothing to do with the case in front of the jury, about my past.

4.   Mr. Wright's conviction is against the manifest weight of the evidence. Fifth and Fourteenth Amendments to the United States Constitution; and Section 16, Article I of the Ohio Constitution. (Jan. 13, 2011 Judgment Entry Order to Transport.).

Supporting Facts: The detective Jones testified that Shawn was the only link that puts me, Curtis Wright in the Wallace house that Shawn and Brandon Ellenbaugh burglarized. It was Shawn's word is why I'm locked up.  (Doc. 2, pp. 5-9 and Doc. 2-2, p.2).

It is the position of the Respondent that all of Petitioner's claims are procedurally defaulted.

**Procedural Default:**

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6 (1982) (*per curiam*; *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is precluded by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith,* 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id*. Second, the court must determine whether the state courts actually enforced the state procedural sanction. *Id*. Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Id*. Finally, if the court has determined that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner is required to demonstrate that there was cause for him not to follow

6

the procedural rule and that he was actually prejudiced by the alleged constitutional error. *Id.* This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir.1985).

    <u>Claims one, three and </u>four. Petitioner failed to present claims one, three and four to the Ohio Supreme Court. The sole proposition of law Petitioner raised in his appeal to the Ohio Supreme Court was that involving the alleged denial of his right to confront witnesses against him. *See Exhibit 16 to Return of Writ.* Further, he may now no longer do so, under Ohio's doctrine of *res judicata*. *See State v. Cole,* 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967).

    Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. *See Coleman v. Thompson*, 501 U.S. 722, 732–33, (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts. *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers,* 377 U.S. 288, 297 (1964); *see also Jamison v. Collins*, 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

    The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry* rule, is an adequate ground for denying federal habeas relief. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour v. Walker,* 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir.

2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16.  Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that *res judicata* does not rely on or otherwise implicate federal law. Accordingly, this Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

    <u>Claim two</u>. In claim two, Petitioner asserts he was denied the right to confront witnesses against him because the trial court prohibited him from cross-examining Penny Wilson and Brittani Riley.  The state appellate court explicitly reviewed this claim for plain error only, however, due to Petitioner's failure to object at trial:

> On the second morning of trial, a bench conference was held where the court stated that it had a copy of a police report filed the evening before alleging that Bridget Ellenbaugh (appellant's girlfriend's daughter) received threatening comments from her aunt (Penny Wilson) and her cousin (Brittani Riley), two witnesses who would be testifying for the state. (Tr. 204). The report was retained as a court exhibit for purposes of appeal. According to the exhibit, appellant called the police to report that Bridget told him that Penny and Brittani were threatening her about her testimony to be presented the next day. The police obtained a statement from Bridget, who reported that her aunt and cousin asked her if appellant was threatening her and asked her to sign a paper stating the appellant was threatening her. At one point, while Penny was in the car, Brittani told Bridget that her kids could be taken away from her if she did not recant her statement, at which point Penny instructed Brittani to get in the car. Brittani then asked Bridget if she could call her later.
>
> The state asked that the trial court prohibit the defense from raising these allegations during the witnesses' testimony, stating that the claim had not yet been investigated and the witnesses could end up pleading the Fifth Amendment. (Tr. 205). The defense argued that

the allegations were relevant to the veracity of Penny and Britanni. (Tr. 205–206).

The court ruled that the probative value of the allegations was outweighed by the prejudicial effect since no investigation had yet taken place, noting that a trial could be interrupted merely by a defendant filing a report during trial. (Tr. 207). The court later examined Bridget to ensure that she had not been threatened into testifying and that she would testify truthfully. (Tr. 207, 386). Bridget then testified that her cousin, Brittani, did not sleep over on the night of the burglary. (Tr. 392).

Brittani Riley, however, testified that, because she had to work until 6:00 a.m. that Saturday morning and had to return to work at 2:00 p.m., she slept over at the house where appellant lived because it was closer to work than her own home. (Tr. 254). She arrived at 6:30 a.m. and about twenty minutes later, she saw a vehicle pull in with appellant in the driver's seat and Shawn Ellenbaugh in the passenger seat. (Tr. 256). She noticed that the trunk was open and that they could not shut it. (Tr. 256–257).

Brittani then testified that later that evening, she asked Shawn why they came in so late. He told her that appellant would kill him if he told anyone but eventually started crying and told her about the burglary. (Tr. 263). . . . She told her mother, Penny Wilson, in hopes that her mother could help because she was formerly a police officer. Her mother testified that when she spoke with Shawn, he was crying and shaking. She asked him to do the right thing, and he agreed to confess to the police. (Tr. 285).

Appellant argues that by refusing to allow questioning of these two witnesses about the allegation that they tried to intimidate Bridget Ellenbaugh into changing her testimony,FN1 he was denied the right to meaningful cross-examination. He urges that if the jury heard about the police report, it would not only have damaged the credibility of these two witnesses but it also would have reinforced that they were biased against him.

FN1. Appellant does not argue that Bridget's testimony was actually influenced; rather, the argument is focused on the character of Penny and Brittani.

Initially, we note that an appellate court need not determine the propriety of an order granting or denying a motion in limine, which is merely a preliminary ruling, unless the claimed error is preserved by an objection, proffer, or ruling on the record at the

proper point during the trial. *State v. Maurer* (1984), 15 Ohio St.3d 239, 259–260 (the failure to preserve a preliminary ruling constitutes waiver). Although the matter was discussed and ruled upon on the record mid-trial, this was specifically presented as and labeled in limine ruling on the state's request to exclude evidence. (Tr. 207). After the in limine bench conference, Shawn testified about the details of the burglary he helped commit. Then, Brittani and Penny testified. Nowhere during the testimony of Penny or Britanni was the in limine ruling sought to be changed into a final ruling.

One of rationales behind the rule is that the court should make its final ruling in context. *State v. Hancock*, 108 Ohio St.3d 57, 2006–Ohio–160, ¶ 59 (objecting party must challenge evidence during trial when issue is presented in full context); *State v. Grubb* (1986), 28 Ohio St.3d 199, 201–202 (it is the potential treatment of an issue to be later resolved when it arises in the context of the trial where the trial court may change its mind based upon circumstances that are developed). Here, this would refer to the direct testimony of these witnesses being presented in order to determine the whole context of the contested items said to have bearing on their credibility. *See State v. Menton*, 7th Dist. No. 07MA70, 2009–Ohio–4604, ¶ 58 (raised before nurse's testimony but not during).

In any event, the court's ruling was not erroneous. Appellant does not cite Evidentiary Rules here. However, he argues the evidence could have shown bias and could have exposed that the witnesses were not credible. Evid.R. 403, 608 and 616 appear most relevant.

Evid.R. 608(B) provides that specific instances of the conduct of a witness, for the purposes of attacking the witness' character for truthfulness may in the discretion of the court, if clearly probative of untruthfulness, be inquired into on cross-examination of the witness concerning the witness's character for untruthfulness. Pursuant to Evid.R. 616(A), "Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence."

Appellant states that the allegations would have helped establish his belief that the family was biased against him because they wanted him out of Pam Wilson's life. However, he did not ask either Penny or Bridget about this theory of his. Defense counsel did begin asking Penny whether she disliked appellant but then discontinued this line of questioning without attempting to elicit

evidence on his theory. (Tr. 288). He could have questioned them on this topic but did not.

We also note that appellant's brief does not provide specifics or explain how exactly credibility or bias would be established. The only reason we know about the contents of the report was from ordering the exhibit from the trial court, not from the contents of appellant's brief, which only mentioned a general allegation of threatening by Penny and Brittani.

Notably, nothing in the report influences Penny's character for truthfulness. In fact, it states that Penny was concerned that Bridget was being untruthful and expressed worry that appellant was coercing her niece's testimony. And, Penny was in the car when Brittani allegedly made the unfortunate statement about the possibility that Bridget's children could be taken away.

Although appellant views the statement allegedly made by Bridget as threatening, it could be construed as a concerned cousin expressing what could happen for perjuring oneself in order to remain under a roof with a burglar who is dating your mother even though they are said to be first cousins. This does not establish a specific instance of untruthfulness or significantly affect her credibility. Rather, it is a family member taking one person's side over another's and an admonition to tell the truth.

Evidence Rule 403(A) requires the court to exclude the evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." A criminal defendant's right to confront and cross-examine a witness is not unlimited, and the trial court retains wide latitude under the Confrontation Clause to impose reasonable limits on cross-examination due to concerns regarding issues such as harassment, prejudice, and confusion of issues. *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 679; *State v. Green* (1993), 66 Ohio St.3d 141, 147. The limitation of cross-examination lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. *State v. Acre* (1983), 6 Ohio St.3d 140, 145 (such a decision will not be disturbed in the absence of a clear showing of an abuse of discretion).

As the state urges, the trial court placed a reasonable limit on cross-examination. The state points out that the allegations of intimidation were in a police report that had not yet been investigated and they are appellant's interpretation of an event occurring between a defense witness who lived with appellant and

11

> her concerned aunt and cousin. As the trial court noted, a defendant could file a report mid-trial to generate new, uninvestigated evidence to use to impeach a witness. Considering the particular concerns in this case and incorporating the review conducted supra, we conclude that the trial court did not clearly abuse its discretion in granting the state's motion to exclude this evidence from trial, especially where Bridget did not change her statement and maintained her stance in favor of appellant's defense. For all of these reasons, this assignment of error is overruled.

*State v. Wright*, 2011 WL 5346084, at *5-7.

The United States Court of Appeals for the Sixth Circuit has held that plain error review does not constitute a waiver of the state's procedural default rules. *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). As explained by the United States District Court for the Northern District of Ohio in *Adams v. Bradshaw*, 484 F.Supp.2d 753, 771 (N.D. Ohio 2007):

> Ohio has a contemporaneous objection rule under which an appellant who fails to object waives later review of the issue unless plain error can be shown. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir.2004), cert. denied, 544 U.S. 1003, 125 S.Ct. 1939, 161 L.Ed.2d 779 (2005) (citing *State v. Smith*, 89 Ohio St.3d 323, 332, 731 N.E.2d 645 (2000)). The Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice. *Id.; Hinkle v. Randle,* 271 F.3d 239, 244 (6th Cir. 2001); *Stojetz v. Ishee*, 2006 WL 328155 *12 (S.D. Ohio Feb.10, 2006).
>
> A state court's review of an issue for plain error is considered by the Sixth Circuit as the enforcement of a procedural default. *Williams*, 380 F.3d at 968; *Hinkle*, 271 F.3d at 244. The federal court, in determining whether a state court has relied on a procedural rule to bar review of an issue, examines the latest reasoned opinion of the state courts and presumes that later courts enforced the bar instead of rejecting the claim on the merits. *Hinkle*, 271 F.3d at 244 (citing *Ylst, v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991)).

*Id.* This Court likewise concludes that petitioner has waived the right to present claim two in these habeas corpus proceedings.

Although the state appellate court alternatively dismissed petitioner's claim on the merits, such alternative ruling does not forgive the waiver or otherwise revive the claim for purposes of habeas corpus review. *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989) ("a state court need not fear reaching the merits of a federal claim in an alternative holding"); *Bowling v. Parker*, 344 F.3d 487, 498 (6th Cir. 2003) (where state court's dismissal of claim on merits constitutes an alternative holding, federal habeas court will consider the claim procedurally defaulted); *Kenney v. Haviland*, No. 1:04 CV 2194, 2006 WL 2792171, at *6 n. 8 (N.D. Ohio Sep.26, 2006) ("The mere existence of the clear statement rule confirms that an alternative holding on the merits cannot save a claim where the court clearly and expressly enforces a state procedural bar").

Accordingly, the Magistrate Judge concludes that Petitioner has waived all of the grounds he now presents for federal habeas corpus relief.

Petitioner may still obtain review of his claims on the merits, if he can establish cause for his procedural defaults, as well as prejudice from the alleged constitutional violations.

> " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him[;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule."
> *Coleman v. Thompson,* 501 U.S. 722, 753 (1991).

*Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). Petitioner's *pro se* status or "ignorance of the law and procedural requirements for filing a[n] ... appeal is insufficient to establish cause to excuse his procedural default." *See Bonilla v. Hurley*, 370 F.3d 494, 498 (6th Cir. 2004)(citation omitted).

Beyond the four-part *Maupin* analysis, this court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992).

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317, 115 S.Ct. 851. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 115 S.Ct. 851. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence— whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id*. at 321, 115 S.Ct. 851.

*Souter v. Jones*, 395 F.3d 577, 590-91 (6th Cir. 2005)(footnote omitted).  Petitioner has failed to meet this standard here.

**WHEREUPON**, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

**Procedure on Objections:**

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those

specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

s/Mark R. Abel
United States Magistrate Judge